United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE ANDERSON, et al.,<br>Plaintiffs,<br>v.<br>DIANA DOOLEY,<br>Defendant. | Case No. 15-cv-05120-HSG<br>**ORDER DISMISSING COMPLAINT WITH PREJUDICE**<br>Re: Dkt. No. 11 |

Pending before the Court is a motion to dismiss brought by Defendant Diana Dooley in her official capacity as Secretary of the California Department of Health and Human Services. Dkt. No. 18. For the reasons articulated below, the motion is GRANTED.

**I. BACKGROUND**

On November 9, 2015, Plaintiffs Bruce Anderson, John Wilson, and Robert Austin, (together, the "Individual Plaintiffs") and Plaintiff California Advocates for Nursing Home Reform ("CANHR") brought an action under 42 U.S.C. § 1983, requesting a declaration that Defendant Diana Dooley, in her official capacity as Secretary of the California Department of Health and Human Services, has been violating subsections of the Federal Nursing Home Reform Act, 42 U.S.C. §§ 1395i-3, 1396r (1996) (the "FNHRA"). Dkt. No. 1 ("Compl."). Specifically, Plaintiffs "seek to stop California Secretary of Health and Human Services Diana Dooley from willfully violating federal laws that protect vulnerable nursing home residents from being forcibly removed from their homes and dumped into hospitals." *Id.* ¶ 1.

Plaintiffs' complaint alleges the following: The Individual Plaintiffs were each removed from their nursing homes and sent to hospitals. *Id.* ¶¶ 12-14. Upon termination of their hospital stays, the Individual Plaintiffs availed themselves of federally mandated readmission hearings

before the California Department of Health Care Services ("DHCS"). *Id.* ¶ 5. At their readmission hearings, the Individual Plaintiffs all received favorable outcomes, presumably entitling them to readmission at their prior nursing homes. *Id.* However, the Individual Plaintiffs have been unable to return to their nursing homes because Defendant has been violating the FNHRA by failing to require either DHCS or the California Department of Public Health ("CDPH") to enforce favorable readmission orders. *Id.* ¶¶ 4-5.

## II. APPLICABLE STATUTORY LAW

The FNHRA, an amendment to the Medicaid Act, applies to all nursing home residents and sets out requirements for notice, hearings, and appeals of discharges. *Id.* ¶ 24; 42 U.S.C. §§ 1395i-3, 1396r (1996). Under FNHRA subsection (e)(3), "[t]he State . . . must provide for a fair mechanism for hearing appeals on transfers and discharges of residents of [skilled nursing facilities]. Such mechanism must meet the guidelines established by the Secretary under subsection (f)(3) of this section." 42 U.S.C. § 1395i-3 (e)(3). Subsection (f)(3) provides that "the Secretary shall establish guidelines for minimum standards which State appeals processes under subsection (e)(3) of this section must meet to provide a fair mechanism for hearing appeals on transfers and discharges of residents from skilled nursing facilities." 42 U.S.C. § 1395i-3 (f)(3).

In response to the FNHRA's directive, the Centers for Medicare and Medicaid Services ("CMS") adopted several federal regulations. Most relevant to the current action, 42 C.F.R. § 431.205(b) requires that the hearing be before the state's Medicaid agency or provide for a right of appeal to that agency. 42 C.F.R. § 431.205(b). Moreover, under 42 C.F.R. § 431.246:

> The agency must promptly make corrective payments, retroactive to the date an incorrect action was taken, and, if appropriate, provide for admission or readmission of an individual to a facility if—
> (a) The hearing decision is favorable to the applicant or beneficiary; or
> (b) The agency decides in the applicant's or beneficiary's favor before the hearing.

42 C.F.R. § 431.246.

## III. DISCUSSION

Defendant articulates four main reasons that Plaintiffs' complaint should be dismissed: (1) Plaintiffs lack Article III standing to bring this action; (2) Plaintiffs have no private federal right

enforceable through § 1983; (3) Plaintiffs fail to state a claim for equitable relief; and (4) federal regulations such as 42 C.F.R. § 431.246 are not enforceable through § 1983. Dkt. No. 11 ("MTD") at 1. In the alternative, Defendant contends that the case should be stayed under the doctrine of primary jurisdiction. *Id*. Because the Court holds that Plaintiffs have no private federal right enforceable through § 1983, the Court need not address Defendant's other arguments.[1]

**A. Legal Standard**

**i. Rule 12(b)(6) Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. On a motion to dismiss, the court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But, the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**ii. Federal Private Right of Action Enforceable Through § 1983**

A plaintiff may enforce rights created by federal statutes through § 1983. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012).

[1] Whether a plaintiff possesses Article III standing goes to this Court's subject matter jurisdiction and therefore generally must be resolved as an antecedent question. *See Steel Co.*, 523 U.S. at 101. However, "there are non-constitutional grounds on which [the Court] may dismiss a suit before considering the existence of federal subject matter jurisdiction," including "grounds of prudential standing, such as statutory standing." *Potter v. Hughes*, 546 F.3d 1051, 1055 (9th Cir. 2008). Because the Court holds that Congress did not create a privately enforceable statutory right, this case presents the rare occasion in which the Court need not address Plaintiffs' Article III standing. *See National R.R. Passenger Corp.*, 414 U.S. at 465 n. 13.

However, for a federal statute to be privately enforceable through § 1983, "it must create an individual right." *Henry A.*, 678 F.3d at 1005. In other words, § 1983 can only be used to enforce violations of federal rights rather than violations of federal law. *Id.* at 1005; *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). The Supreme Court has held that "if Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms." *Gonzaga Univ.*, 536 U.S. at 290. "Anything short of an unambiguously conferred right will not support a 1983 action." *Watson v. Weeks*, 436 F.3d 1152, 1159 (9th Cir. 2006).

The Supreme Court has set out a three-factor test for determining whether a federal statute creates an individual right: (1) Congress must have intended that the provision at issue benefit plaintiff; (2) the right protected by the statute cannot be so "vague and amorphous" that enforcement would strain judicial competence; and (3) the statute must impose a binding obligation on the state. *Blessing*, 520 U.S. at 340-41. If a statute satisfies the *Blessing* test, the plaintiff's right is "presumptively enforceable by § 1983 subject only to a showing that Congress specifically foreclosed a remedy under § 1983." *Ball v. Rodgers*, 492 F.3d 1094, 1116 (9th Cir. 2007) (internal citations omitted). A state can demonstrate that Congress foreclosed § 1983 actions either explicitly in the language of the statute or implicitly "by creating a comprehensive enforcement scheme incompatible with individual enforcement." *Id.*

**B. Analysis**

Plaintiffs contend that two subsections of the FNHRA, 42 U.S.C. § 1395i-3 (e)(3) and 42 U.S.C. § 1395i-3 (f)(3), read in conjunction with two federal regulations, 42 C.F.R. § 431.205(b) and 42 C.F.R. § 431.246, confer a private federal right enforceable through § 1983. Compl., ¶¶ 23-35. The Court finds that Congress did not clearly and unambiguously create the right Plaintiffs assert.

Evidence of congressional intent to create a private right "can be found in a statute's language as well as in its overarching structure." *Ball*, 492 F.3d at 1105. To create a new federal right, "the statute must be phrased in terms of the persons benefited . . . with an *unmistakable focus* on the benefited class." *Id.* at 1106 (emphasis in original). Moreover, an agency regulation "may be relevant in determining the scope of the right conferred by Congress." *Save Our Valley*

*v. Sound Transit*, 335 F.3d 932, 943 (9th Cir. 2003). However, an agency regulation cannot create an individual right enforceable under § 1983. *Id.*; *Ball*, 492 F.3d at 1114.

**i. FNHRA Subsections (e)(3) and (f)(3)**

Section 1395i-3 of the FNHRA, entitled "Requirements for, and assuring quality of care in, skilled nursing facilities," provides that "The State . . . must provide for a fair mechanism for hearing appeals on transfers and discharges of residents of [skilled nursing homes]. Such mechanism must meet the guidelines established by the Secretary under subsection (f)(3) of this section." 42 U.S.C. § 1395i-3 (e)(3). FNHRA subsection (f)(3), entitled, "Federal guidelines for State appeals process for transfers and discharges," clarifies that "the Secretary shall establish guidelines for minimum standards which State appeals processes under subsection (e)(3) of this section must meet to provide a fair mechanism for hearing appeals on transfers and discharges of residents from skilled nursing facilities." 42 U.S.C. § 1395i-3 (f)(3).

Defendant asserts that FNHRA subsections (e)(3) and (f)(3) are "[f]ar from asserting any explicit right, in 'clear and unambiguous terms,'" and argues that Plaintiffs attempt to "bootstrap in their claim" through federal regulations. MTD at 17-18. Plaintiffs respond that they possess a private right of action under FNHRA subsections (e)(3) and (f)(3) because they are "the very individuals the anti-dumping statute and the fair hearing statute were designed to protect" and Medicaid Act provisions "virtually indistinguishable" from the applicable FNHRA subsections have been held to confer enforceable private rights. Opp'n at 15. Further, according to Plaintiffs, federal regulations 42 C.F.R. § 431.205(b) and 42 C.F.R. § 431.246 "define or clarify" their private statutory right to be protected against illegal transfers and discharges. Opp'n at 17.

The Court agrees with Defendant. Neither of the quoted FNHRA subsections confers a private federal right in "clear and unambiguous terms." *See Gonzaga.*, 536 U.S. at 290. Rather than phrasing the subsections to focus on the nursing home residents who inevitably benefit from the FNHRA, Congress chose to focus on "institutional polic[ies] and practice[s]" necessary for Medicare and Medicaid administration. *See Ball*, 492 F.3d at 1107 (quoting *Gonzaga*, 536 U.S. at 288). Both subsections (e)(3) and (f)(3) "unmistakably focus" on duties imposed on the subjects of the statutes — the state and the secretary, respectively. This statutory language, in which the

term "residents" is used simply to clarify whose transfers and discharges are being referenced, is very different from the explicit rights-conferring language that courts have recognized in Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972. *See Gonzaga*, 536 U.S. at 284, 284 n.3 (recognizing that the Supreme Court rarely finds congressional intent to create a private right of action unless the statute includes "explicit 'right-or duty-creating language'" similar to Title VI, which provides that "*No person* in the United States *shall* . . . be subjected to discrimination under any program or activity receiving Federal financial assistance on the basis of race color, or national origin," or Title IX, which provides that "*No person* in the United States *shall*, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance") (emphasis in original).

This holding is consistent with the reasoning of the sizeable majority of courts that have found that the FNHRA does not confer private federal rights. *See, e.g.*, *Prince v. Dicker*, 29 F. App'x 52, 54 (2d Cir. 2002); *Fiers v. La Crosse Cty.*, No. 15-CV-88-JDP, 2015 WL 5530258, at *7 (W.D. Wis. Sept. 18, 2015); *Duncan v. Johnson-Mathers Health Care, Inc.*, No. 5:09-CV-00417-KKC, 2010 WL 3000718, at *10 (E.D. Ky. July 28, 2010); *McCarthy v. 207 Marshall Drive Operations, LLC*, No. 615CV2121ORL18TBS, 2015 WL 9701089, at *2 (M.D. Fla. Dec. 24, 2015), *report and recommendation adopted*, No. 615CV2121ORL18TBS, 2016 WL 164306 (M.D. Fla. Jan. 13, 2016); *Hawkins v. Cty. of Bent, Colo.*, 800 F.Supp.2d 1162, 1166 (D.Colo.2011); *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1330 (N.D. Ga. 2000).

Plaintiffs argue that the Ninth Circuit found "indistinguishable" provisions of the Medicaid Act enforceable through private § 1983 actions in *Watson v. Weeks*, 436 F.3d 1152 (9th Cir. 2006), and *Ball v. Rodgers*, 492 F.3d 1094 (9th Cir. 2007). Opp'n at 15. However, analysis of the relevant statutes in *Watson* and *Ball* reveals key differences between the statutes at issue in those cases and FNHRA subsections (e)(3) and (f)(3).

In *Watson*, the Ninth Circuit held that a different subsection of the Medicaid Act, 42 U.S.C. § 1396a(a)(10), confers a private right enforceable through § 1983. *Watson*, 436 F.3d at 1162. Section 1396a(a)(10) states that "[a] State plan for medical assistance must . . . provide for

making medical assistance available . . . to all individuals." 42 U.S.C. § 1396a(a)(10). The Ninth Circuit found that 1396a(a)(10)'s language "unmistakably focused on the specific individuals benefited." *Id.* at 1160.

Similarly, in *Ball*, the Ninth Circuit found that the Medicaid Act's free choice provisions, 42 U.S.C. §§ 1396n(c)(2)(C) and (d)(2)(C), confer private rights enforceable through § 1983. *Ball*, 492 F.3d at 1107. The free choice provisions state that "[a] waiver shall not be granted . . . unless the State provides assurances . . . that *such individuals* who are determined to be likely to require the level of care in a hospital . . . *are informed* of the feasible alternatives . . . *at the choice of such individuals*." 42 U.S.C. § 1396n(c)(2)(C) (emphasis added). Further, "[a] waiver shall not be granted . . . unless the State provides assurances . . . that *such individuals* who are determined to be likely to require the level of care provided in a skilled nursing facility . . . *are informed* of the feasible alternatives . . . which *such individuals may choose*." 42 U.S.C. § 1396n(d)(2)(C) (emphasis added). In finding an enforceable private right, the Ninth Circuit held that the repeated use of "individuals" indicated Congress's intent to focus on the "explicitly identified rights" of individual beneficiaries. *Ball*, 492 F.3d at 1107. Moreover, neither provision used the term "individuals" "simply in passing": each was constructed to stress the individuals' rights. *Id.*

Unlike the Medicaid Act provisions at issue in *Watson* and *Ball*, FNHRA subsections (e)(3) and (f)(3) do not "unmistakably focus on the specific individuals benefited." Instead, "residents" is used in passing and does not establish any congressional intent, let alone a clear and unambiguous intent, to create a private right for residents. *See Ball*, 492 F.3d at 1109 (distinguishing cases finding no individual rights because the statutes at issue in those cases "do not mention the service recipients, or refer to them in the aggregate, or refer to them in the context of describing a more general institutional policy or practice").

The Court recognizes that the Third Circuit and the Western District of Washington have held that other subsections of the FNHRA are enforceable through private § 1983 actions. *See Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1315-18 (W.D. Wash. 2015) *reconsideration denied*, No. C14-0567JLR, 2015 WL 4076789 (W.D. Wash. July 1, 2015) (holding that 42 U.S.C. §

1396r(e)(7) satisfies the first *Blessing* prong); *Grammer v. John J. Kane Reg'l Centers-Glen Hazel*, 570 F.3d 520, 522 (3d Cir. 2009) (concluding that "the language of the FNHRA is sufficiently rights-creating and that the rights conferred by its various provisions are neither 'vague and amorphous' nor impose upon states a mere precatory obligation"). Nonetheless, the Court does not find the reasoning of these cases preclusive of the result it reaches here. Notably, in holding in *Grammer* that the FNHRA creates private federal rights, the Third Circuit stated that it was "not concerned that the provisions relied upon by the [a]ppellant are phrased in terms of responsibilities imposed on the state or the nursing home." *Grammar*, 520 F.3d at 530. In the Court's view, that statement is difficult to square with the Supreme Court's direction that in order to create a federal right, "the statute must be phrased in terms of the persons benefited." *Gonzaga*, 536 U.S. at 274. Accordingly, to the extent *Grammer* and *Dunakin* could be read to support Plaintiffs' argument, the Court respectfully declines to follow those cases.

**ii. 42 C.F.R. § 431.205(b) and 42 C.F.R. § 431.246**

The Court's conclusion is unchanged by consideration of federal regulations 42 C.F.R. §§ 431.205(b) and 431.246.

Section 431.205(b) requires that a state's hearing system provide for hearings or appeals before the state's Medicaid agency. 42 C.F.R. § 431.205(b). The majority of the regulation does not mention individuals, and nothing in the regulation can be interpreted as reflecting a "clear and unambiguous" creation of resident rights. *See Gonzaga*, 536 U.S. at 290.

Under Section 431.246:

> The agency must promptly make corrective payments, retroactive to the date an incorrect action was taken, and, if appropriate, provide for admission or readmission of an individual to a facility if—
> (a) The hearing decision is favorable to the applicant or beneficiary; or
> (b) The agency decides in the applicant's or beneficiary's favor before the hearing.

42 C.F.R. § 431.246. While the use of "individual" is unquestionably more central here, an agency regulation cannot create an individual right enforceable under § 1983. *Save Our Valley*, 335 F.3d at 939. In light of the language and structure of FNHRA subsections (e)(3) and (f)(3), 42 C.F.R. § 431.246 is insufficient to establish that Congress had a "clear and unambiguous" intent to

create a federal private right enforceable through § 1983.

Accordingly, the Court finds that Congress did not create a new individual right enforceable against the states through FNHRA subsections (e)(3) and (f)(3). *See Sanchez v. Johnson*, 416 F.3d 1051, 1057 (9th Cir. 2005) ("[W]hen reviewing legislation enacted pursuant to the spending power, courts should be especially reluctant to conclude that Congress intended to create a new individual right enforceable against the States."). Plaintiffs' complaint fails the first *Blessing* prong, which requires them to plead a violation of a federal right rather than simply a failure to comply with a federal law.[2]

## IV. CONCLUSION

The Court holds that Plaintiffs have no private right of action enforceable through § 1983 under FNHRA subsections (e)(3) and (f)(3), and accordingly GRANTS Defendant's motion to dismiss. Any amendment would be futile given the Court's resolution of this question of law, and thus the complaint is dismissed with prejudice. *See Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir.) *amended*, 856 F.2d 111 (9th Cir. 1988). The clerk shall enter judgment in favor of Defendant and close the case. Both parties shall bear their own costs of suit. [3]

**IT IS SO ORDERED.**

Dated: June 7, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge

[2] Because Plaintiffs cannot satisfy the first factor of the *Blessing* test, the Court need not consider the second and third factors.

[3] On December 30, 2015, Defendant requested that the Court take judicial notice of several documents attached to its MTD. Dkt. No. 12. On April 1, 2016, Defendant submitted a second request for judicial notice. Dkt. No. 22. Because the Court does not rely on any of the aforementioned documents, Defendant's requests for judicial notice are denied as moot.

United States District Court
Northern District of California