UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE ANDERSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MARK GHALY,<br><br>Defendant.[1] | Case No. 15-cv-05120-HSG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 37 |

The Court previously held that Plaintiffs have no right of action enforceable through § 1983 under the relevant Federal Nursing Home Reform Act ("FNHRA") subsections and dismissed the complaint with prejudice. Dkt. No. 23. On July 18, 2019, the Ninth Circuit reversed the Court's decision and found that the relevant FNHRA provisions do create a statutory right enforceable under § 1983. *Anderson v. Ghaly*, 930 F.3d 1066, 1070 (9th Cir. 2019). However, the Ninth Circuit also held that the "present complaint does not allege a plausible violation of the FNHRA appeals provision" and remanded the case for further proceedings. *Id*. at 1080.

In light of the Ninth Circuit's opinion in *Anderson*, Plaintiffs filed an amended complaint. Dkt. No. 35 ("FAC"). Defendant filed a motion to dismiss, now presently before the Court. Dkt. No. 37 ("Mot."). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civ. L.R. 7–1(b). For the reasons articulated below, the Court **DENIES** Defendant's motion.[2]

---

[1] Under Federal Rule of Civil Procedure 25(d), the Court substitutes Mark Ghaly, current Secretary of the California Department of Health and Human Services, for Diana Dooley.
[2] Defendant requests that the Court take judicial notice of eighteen exhibits. Dkt. No. 38. Under Federal Rule of Evidence 201, a court may take judicial notice of a fact "not subject to reasonable

## I. BACKGROUND

Plaintiffs Bruce Anderson, John Wilson, and Robert Austin (collectively, the "Resident Plaintiffs") and Plaintiff California Advocates for Nursing Home Reform ("CANHR") filed this action under 42 U.S.C. § 1983 against Defendant Mark Ghaly, in his official capacity as Secretary of the California Department of Health and Human Services.[3] *See generally* FAC. Plaintiffs allege that Defendant violated their federal rights under certain FNHRA sections establishing a "'fair mechanism for hearing appeals' regarding transfers and discharges from skilled nursing facilities." FAC ¶¶ 66–67.

The Court first provides the relevant statutory framework and facts below.

### A. Applicable Statutory Framework

#### i. FNHRA Provisions

Congress enacted FNHRA as amendments to the Medicare and Medicaid Acts to improve the quality of care for Medicaid and Medicare-eligible nursing home residents. *See Anderson*, 930 F.3d at 1070 (citations omitted). FNHRA imposed various requirements "as a prerequisite for nursing homes to be reimbursed under Medicaid" and Medicare. *Id.*; *see also id.* at 1070 n.1. The requirements are codified in the Medicaid Act at 42 U.S.C. § 1396r and the Medicare Act at 42 U.S.C. 1395i-3.

Under FNHRA subsection (e)(3), "[t]he State . . . must provide for a fair mechanism for hearing appeals on transfers and discharges of residents of [skilled nursing facilities]. Such mechanism must meet the guidelines established by the Secretary under subsection (f)(3) of this section." 42 U.S.C. § 1395i-3(e)(3); *see also id.* § 1396r(e)(3). Subsection (f)(3) provides that

---

dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Accordingly, a court may take "judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics*, 899 F.3d at 999 (9th Cir. 2018) (citation and quotations omitted). Further, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id.* In any event, the Court does not consider the exhibits in resolving the motion, and thus **DENIES AS MOOT** Defendant's request for judicial notice. *See In re Facebook, Inc. S'holder Derivative Privacy Litig.*, 367 F. Supp. 3d 1108, 1118 (N.D. Cal. 2019) (denying as moot request for judicial notice of documents not considered by the court).
[3] Sadly, Mr. Wilson passed away while the case was on appeal. FAC ¶ 16.

2

"the Secretary shall establish guidelines for minimum standards which State appeals processes under subsection (e)(3) of this section must meet to provide a fair mechanism for hearing appeals on transfers and discharges of residents from skilled nursing facilities." 42 U.S.C. § 1395i-3(f)(3); *see also id*. § 1396r(f)(3).

In response to the FNHRA's directive, the Centers for Medicare and Medicaid Services ("CMS") adopted several regulations. Most relevant to the current action, 42 C.F.R. § 431.205(b) requires that the hearing be before the state's Medicaid agency or provide for a right of appeal to that agency. 42 C.F.R. § 431.205(b). Moreover, under 42 C.F.R. § 431.246:

> The agency must promptly make corrective payments, retroactive to the date an incorrect action was taken, and, if appropriate, provide for admission or readmission of an individual to a facility if—
> (a) The hearing decision is favorable to the applicant or beneficiary; or
> (b) The agency decides in the applicant's or beneficiary's favor before the hearing.

42 C.F.R. § 431.246.

### ii. California Law

Readmission hearings are held before the Department of Health Care Services ("DHCS"), which is the state agency charged with oversight of the Medicaid program. *See* Cal. Health & Safety Code § 1599.1(h)(1); Cal. Welf. & Inst. Code § 10740. Under § 1599.1(h)(1):

> If a resident of a long-term health care facility has been hospitalized in an acute care hospital and asserts his or her rights to readmission pursuant to bed hold provisions, or readmission rights of either state or federal law, and the facility refuses to readmit him or her, the resident may appeal the facility's refusal.

Cal. Health & Safety Code § 1599.1(h)(1). In addition, the facility's refusal to readmit the resident "shall be treated as if it were an involuntary transfer under federal law," and the rights and procedures that apply to transfers and discharges "shall apply to the resident's appeal under this subdivision." *Id*. § 1599.1(h)(2).[4]

A party may appeal the DHCS's final administrative decision through a writ of administrative mandamus to a state superior court. *See* Cal. Gov't Code § 11523; Cal. Civ. Proc.

---

[4] Federal regulations which set forth a resident's rights regarding transfer and discharges are codified in 42 C.F.R. § 483.15. 42 C.F.R. § 483.15(c).

3

Code § 1094.5. California Code of Civil Procedure § 1094.5 permits judicial review of administrative decisions "for the purpose of inquiring into the validity" of the final decision. Cal. Civ. Proc. Code § 1094.5(a). After review, the court shall enter judgment "either commanding respondent to set aside the order or decision, or denying the writ." *Id*. § 1094.5(f). If the judgment "commands that the order or decision be set aside, it may order the reconsideration of the case in light of the court's opinion and judgment and may order respondent to take such further action as is specially enjoined upon it by law." *Id*.

California law also provides a private right of action for residents to "bring a civil action against the licensee of a facility who violates any rights of the residents or patient as set forth in the Patients Bill of Rights … or any other right provided for by federal or state law or regulation." Cal. Health & Safety Code § 1430(b). The licensee may be liable "for up to five hundred dollars ($500) and for costs and attorney fees, and may be enjoined from permitting the violation to continue." *Id*. An agreement purporting to waive a resident's right to sue pursuant to § 1430(b) will be deemed void as contrary to public policy. *Id*.

### B. Plaintiffs' Allegations

The Resident Plaintiffs are former residents of skilled nursing facilities who all won their readmission hearings before the DHCS. FAC ¶¶ 15–17. But according to Plaintiffs, California "did not enforce the DHCS order," so the Resident Plaintiffs were "warehoused" in hospitals after their readmission hearings. *Id*. DHCS purportedly informed Plaintiffs that "it does not retain jurisdiction" and 'has no authority to enforce its own orders" once DHCS issues a final order. *Id*. ¶¶ 54–58. And the California Department of Public Health ("CDPH") has taken the position that it is not "obligated to enforce the decisions of hearing officers relating to appeals of evictions by nursing home residents." *Id*. ¶ 42. According to Plaintiffs, there is "no agency in California that enforces DHCS readmission orders," so California has failed to provide residents with their "right to an administrative procedure that provides for prompt readmission if they are successful." *Id*. ¶ 43.

With respect to the private right of action under § 1430(b), Plaintiffs allege that this "aspect of California law is insufficient to make effective the right to an appeal" for the following

4

reasons: (1) residents who are typically "the victims of forcible dumping" are indigent and cannot retain counsel; (2) state courts do not "uniformly treat DHCS readmission orders as *res judicata*"; and (3) any "appeal from a mandatory injunction automatically stays the injunction, and such appeals take roughly two years to resolve." *Id.* ¶ 45. For these reasons, the FAC pleads that "there are no reported instances of any resident successfully filing such a suit." *Id.* ¶ 46. "Placing this regulatory burden on residents renders the results of the DHCS hearing as meaningless as providing no hearing at all, and strips [the Resident Plaintiffs] of their substantive federal right to return home." *Id.*

### C. Procedural History and Ninth Circuit Decision

Plaintiffs initially filed this action on November 9, 2015. Dkt. No. 1. Defendant moved to dismiss, arguing that (1) Plaintiffs lacked Article III standing; (2) Plaintiffs have no private federal right enforceable through § 1983; (3) the complaint fails to state a claim for equitable relief; and (4) federal regulations such as 42 C.F.R. § 431.246 are not enforceable through § 1983. Dkt. No. 11. In the alternative, Defendant argued that the case should be stayed under the doctrine of primary jurisdiction. *Id.* The Court agreed with Defendant's second argument and held that there was no private federal right enforceable through § 1983. Dkt. No. 23. Because the issue was dispositive, the Court did not address Defendant's alternative arguments.

Plaintiffs appealed, and on July 18, 2019, the Ninth Circuit vacated the Court's order and remanded. *See Anderson*, 930 F.3d at 1081. The Ninth Circuit held that the Resident Plaintiffs have a federally enforceable right to an appeal regarding transfers and discharges, a right which "includes state implementation of the decision on appeal." *Id.* at 1080. However, the *Anderson* panel found that the complaint failed to allege a violation of that right, because the complaint alleged only that "state *agencies*—namely, DHCS and CDPH—refuse to enforce favorable hearing decisions." *Id.* But the relevant FNHRA provision does not require that California "implement hearing decisions directly through a state agency," and the complaint did not allege why other statutory mechanisms or administrative remedies, such as § 1430(b), were insufficient to ensure the right to an appeal provided by FNHRA. *Id.* at 1081. Accordingly, the Ninth Circuit found that the complaint did not allege that California "provides no mechanism whatsoever to

5

enforce each administrative appeal order regarding nursing home transfers and discharges." *Id.*

In light of the Ninth Circuit's opinion, Plaintiffs filed their FAC on September 27, 2019, this time purporting to add allegations as to why § 1430(b) is insufficient to satisfy the federally enforceable right articulated in *Anderson*. *See* FAC ¶¶ 9, 44–51.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citation and quotations omitted).

## III. DISCUSSION

Defendant again moves to dismiss, this time arguing that Plaintiffs fail to state a claim under the Ninth Circuit's directive in *Anderson*. *See generally* Mot. Further, it continues to argue that Plaintiffs lack Article III standing, and that the action should be stayed under the doctrine of primary jurisdiction. *Id.*

### A. Article III Standing

A plaintiff seeking relief in federal court bears the burden of establishing "the irreducible constitutional minimum" of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). First, the plaintiff must have "suffered an injury in fact." *Id.* This requires "an invasion of a legally protected interest" that is concrete, particularized, and actual or imminent, rather than conjectural or hypothetical. *Lujan*, 504 U.S. at 560 (citations omitted). Second, the plaintiff's injury must be "fairly traceable to the challenged conduct of the defendant." *Spokeo*, 136 S. Ct. at 1547. Third, the injury must be "likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560–61).

Defendant argues that Plaintiffs fail to allege that they suffered "any injury as the result of any action or inaction by Secretary Ghaly." Mot. at 20. According to Defendant, the alleged injury of not being readmitted to their facilities is not a "concrete injury-in-fact with respect to the sole Defendant." *Id.* In addition, it asserts that Defendant is not responsible for any individual facility's wrongful conduct, and that any favorable decision would not address Plaintiffs' alleged injury.

Here, Plaintiffs allege that the harm is forcing them "into extended hospital stays and preventing them from returning to their homes." Dkt. No. 41 ("Opp.") at 13 (citing FAC ¶¶ 15–17). The Court agrees with Plaintiffs that this is a particularized harm and not "abstract." Further, each Resident Plaintiff has pled a concrete, particularized injury-in-fact. For example, Plaintiff Anderson alleges that despite receiving a readmission order following his DHCS hearing, he has been unable to return to his previous skilled nursing facility and instead has been "warehoused" at a hospital far from his family and "confined to a bed," where he receives "large doses of antipsychotic drugs." FAC ¶ 15. Plaintiff Wilson also received a favorable DHCS decision, but

he was not able to return to his nursing home and instead was "warehoused" at the hospital. *Id*. ¶ 16. Finally, Plaintiff Austin received a readmission order, but because his previous nursing home would not reaccept him, he was forced to transfer "hundreds of miles away from his family" to a different nursing home in Los Angeles. *Id.* ¶ 17. Cleary, each Resident Plaintiffs' inability to return to his desired home and engage in familiar interactions constitutes a concrete and particularized injury-in-fact.

As to causation, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561. The Court finds that the Resident Plaintiffs' injury of being forced into extended hospital stays is fairly traceable to Defendant's conduct. As alleged, Defendant oversees both DHCS and CDPH and has refused to require either agency to enforce DHCS readmission orders. FAC ¶ 4. According to Plaintiffs, if Defendant were to require either DHCS or CDPH to enforce readmission orders by, for example, withholding funds from noncompliant nursing facilities, the Resident Plaintiffs could return home. *Id.* ¶ 61. Thus, the Resident Plaintiffs' injuries are fairly traceable to Defendant's inaction.

Finally, with respect to Defendant's redressability argument, an outcome favorable to Plaintiffs here would result in an injunction requiring Defendant to enforce DHCS readmission orders. The Resident Plaintiffs would be able to return to their previous nursing facilities and not be "warehoused" in hospitals. The Court finds that the Resident Plaintiffs' harms would be redressed by the requested injunction.

Accordingly, the Court holds that the Resident Plaintiffs have Article III standing to bring this claim. Because the Resident Plaintiffs have standing, the Court need not address whether CANHR does. *See Pub. Citizen v. Dep't of Transp.*, 316 F.3d 1002, 1014–15 (9th Cir. 2003) ("We need only find that one petitioner has standing to allow a case to proceed"), *rev'd on other grounds*, 541 U.S. 752 (2004).

### B. Failure to State a Claim

The Court next turns to Defendant's argument that Plaintiffs fail to state a claim for relief.

8

The Ninth Circuit found that the original complaint failed to state a claim for relief. *Anderson*, 930 F.3d at 1081. Significant to the Ninth Circuit's decision was that Plaintiffs only alleged that state *agencies* refused to enforce favorable hearing decisions, but did not allege that California provides "no mechanism whatsoever to enforce each administrative appeal order regarding nursing home transfers and discharges." *Id*. As examples, the Ninth Circuit found that Plaintiffs could, but did not, allege that § 1430(b) "is insufficient to ensure the right to an appeal provided by FNHRA," nor did they allege "with any specificity why the administrative remedies provided by California law are unavailable to enforce a favorable order after an appeal that a specific resident be readmitted to a nursing facility." *Id*. at 1080–81. In other words, Plaintiffs' prior complaint did not plead that state court proceedings or imposition of citations and fines were insufficient to enforce Plaintiffs' federally protected right. *Id*.

Defendant contends that Plaintiffs fail to satisfy the standards "specifically identified by the Ninth Circuit," Mot. at 8, and instead, "proffer only bald allegations and conclusions as to why they believe the other options are inadequate," Dkt. No. 42 ("Reply") at 4. But here, the Court finds that Plaintiffs have pled factual allegations to support their claim that California fails to provide any mechanism to enforce Plaintiffs' federal right to an appeal under the relevant FNHRA provisions, which the Ninth Circuit has found includes implementation of a favorable decision. *See Anderson*, 930 F.3d at 1075. Plaintiffs allege that there is no state-provided process capable of enforcing DHCS's readmission decision, whether it be through a state agency or through the state judicial system.

With respect to administrative remedies, the FAC includes allegations that DHCS has expressly stated that it "has no authority to enforce its own orders." FAC ¶¶ 54–58. Further, Plaintiffs allege that CDPH has taken the position that it is not obligated to enforce DHCS decisions relating to appeals of evictions by nursing home residents. *Id*. ¶ 42. And it will not issue citations based upon transfer and discharge appeal decisions alone, "[y]et [ ] does investigate the same complaints that resulted in the resident's request for a [transfer and discharge appeal] hearing." Dkt. No. 35-3, Ex. 3 at 2. According to Plaintiffs, because neither DHCS or CDPH will enforce favorable readmission decisions, any citations and fines are ineffective to provide for

"prompt readmission" if Plaintiffs are successful on their readmission hearings. *See* FAC ¶ 43.

In addition to pleading that state agencies disavow authority to enforce favorable DHCS readmission orders, Plaintiffs also specifically allege why § 1430(b) fails to provide redress for the alleged violation of Plaintiffs' rights. *See* FAC ¶¶ 44–51. The FAC alleges that there are "no reported instances of any resident successfully filing" a § 1430(b) suit because of the following: (1) residents who would pursue § 1430(b) are indigent and cannot afford to find and retain counsel (given they are typically MediCal recipients); (2) state courts "do not … uniformly treat DHCS readmission orders as *res judicata*"; and (3) even if state courts did treat DHCS readmission orders as *res judicata*, any appeal from a mandatory injunction "automatically stays the injunction, and such appeals take roughly two years to resolve."[5] *Id*. ¶¶ 45–46. For residents, the "entire purpose of the federally mandated hearing procedure is to provide swift relief," and being forced to wait at least a year and a half to resolve their readmission "is a veritable death sentence for dumping victims." *Id*. ¶¶ 50–51.

Defendant's disagreement with the substance of Plaintiffs' allegations is more suited for adjudication at the summary judgment stage. *See* Mot. at 18–19. Whether or not Plaintiffs' allegations regarding the insufficiency of § 1430(b) are true is a factual question to be borne out by discovery, not a question to be resolved at this stage.[6] And the Court acknowledges Defendant's argument that Plaintiffs did not bring a lawsuit under § 1403(b). But based on the Ninth Circuit's opinion, this is not required, given the allegations as to why § 1430(b) is insufficient to protect their federal rights under FNHRA and the fact that there have been "no reported instances of any resident successfully filing such a suit." *See* FAC ¶¶ 45–46.

The Court will confess that it continues to find Plaintiff's precise theory of relief—i.e., what the requested declaratory and injunctive relief order would actually *say*—less than entirely

---

[5] The Ninth Circuit noted that the "Residents suggest that some California courts have not regarded DHCS decisions" as preclusive, but found that the original complaint did "not address the sufficiency of enforcement in state court proceedings." *Anderson*, 930 F.3d at 1081 n.8.
[6] The Court agrees with Plaintiffs that Defendant's argument regarding the writs of mandate available under California Civil Procedure § 1094.5 does not help its cause, as Plaintiffs here prevailed before the DHCS. *See* Opp. at 10. And the Ninth Circuit specifically noted that there is "no provision allowing the superior court in the mandamus proceeding to order compliance with the decision." *Anderson*, 930 F.3d at 1071.

clear. *See* FAC at 13-14 (seeking, among other things, "[e]quitable relief, including without limitation, an injunction prohibiting Defendant's illegal practices"); *see also Anderson*, 930 F.3d at 1080 ("We do not address what specific forms of redress would be necessary to comply with this provision."). But it nonetheless finds that Plaintiffs have alleged a plausible violation of the FNHRA appeals provision as analyzed by the Ninth Circuit in *Anderson*.

### C. Primary Jurisdiction

Defendant again argues that the Court in its discretion should stay the case under the doctrine of primary jurisdiction. "Primary jurisdiction may apply when a claim is originally cognizable in the courts, but is also subject to a regulatory scheme that is enforced by an administrative body of special competence." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1051 (9th Cir. 2000). It permits a court to stay an action pending referral of issues to an administrative body. *Id.* In determining whether to stay an action, a court should consider "(1) whether application will enhance court decision-making and efficiency by allowing the court to take advantage of administrative expertise; and (2) whether application will help assure uniform application of regulatory laws." *Id*.

The Ninth Circuit has held that primary jurisdiction applies in a "limited set of circumstances," and is "not designed to 'secure expert advice' from agencies 'every time a court is presented with an issue conceivably within the agency's ambit.'" *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (citations omitted). Instead, "it is to be used only if a claim 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency,'" and if "'protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.'" *Id*. (citations omitted).

The Court in its discretion declines to stay proceedings so that "HHS … has the opportunity to address in the first instance whether what Plaintiffs seek is actually required by the Acts and California's State Plan." Mot. at 25. Whether Defendant violated Plaintiffs' federal rights under FNHRA is not a "particularly complicated issue" that Congress has committed to HHS. *See Clark*, 523 F.3d at 1114. And as Plaintiffs note, it is unclear to the Court what question

11

Defendant even would have the Court refer to HHS. *See* Opp. at 19. The dispute is not, as Defendant characterizes, "how a state carries out its obligations under the state Medicaid plan," but whether the state-provided enforcement mechanisms comply with the applicable FNHRA provisions. *See* Reply at 9. That is a question well within the Court's judicial competence.

## IV. CONCLUSION

The Court **DENIES** Defendant's motion to dismiss and **SETS** a case management conference for February 11, 2020 at 2:00 p.m. The Court **DIRECTS** the parties to file on or before February 4, 2020 a joint case management statement including a proposed case schedule through trial. The parties are directed to review and comply with this Court's Civil Pretrial and Trial Standing Order.

**IT IS SO ORDERED.**

Dated: 1/15/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge