UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE ANDERSON, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>MARK GHALY, in his official capacity as Secretary of the CALIFORNIA DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>    Defendant. | Case No. 15-cv-05120-HSG<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING MOTION TO QUASH**<br><br>Dkt. Nos. 51, 56, 57 |

Pending before the Court are a motion for partial summary judgment ("SJ Motion," Dkt. No. 56) and a motion for preliminary injunction ("PI Motion," Dkt. No. 57) filed by Plaintiffs Bruce Anderson, Robert Austin, John Wilson, and California Advocates for Nursing Home Reform ("CANHR") (collectively "Plaintiffs"), for which briefing is complete. Dkt. No. 60 ("SJ Opp."); Dkt. No. 62 ("PI Opp."); Dkt. No. 65 ("SJ Reply"); Dkt. No. 67 ("PI Reply"). Defendant Mark Ghaly ("Defendant"), in his official capacity as Secretary of the California Health and Human Services Agency, has also filed a motion to quash (Dkt. No. 51, "Mot. to Quash") a subpoena served on California Governor Gavin Newsom ("Governor"), which the Court took under submission on March 18, 2020.[1] Dkt. No. 52. On May 8, 2020, the California Association of Health Facilities ("CAHF") filed a motion for leave to file an *amicus curiae* brief in support of Defendant, which the Court granted. Dkt. Nos. 73, 74. For the reasons set forth below, the Court **DENIES** the motion for partial summary judgment and the motion for preliminary injunction, and

---

[1] The Court finds these matters appropriate for disposition without oral argument, and they are deemed submitted. *See* Civil L.R. 7-1(b).

**GRANTS** the motion to quash.

## I.   BACKGROUND

Federal law protects against nursing home resident discharge (also known as "dumping") by requiring states to provide residents with a fair hearing whenever they have been refused readmission from a hospital.  *See* 42 U.S.C. §§ 1395i3(c), (e)(3); 1396r(c), (e)(3).[2]  The Ninth Circuit held that the right to a "hearing" includes the right to a meaningful result.  *Anderson v. Ghaly*, 930 F.3d 1066, 1076 (9th Cir. 2019).  In California, the Office of Administrative Hearings and Appeals ("OAHA"), a division of the Department of Health Care Services ("DHCS"), conducts the hearing and issues an order.  *See* Declaration of Jonathan Evans, M.D. (Dkt. No. 56-7, "Evans Decl.") ¶¶ 11-12.  Once OAHA "issues its final order, it does not retain jurisdiction in the matter and has no authority to enforce its own orders." *See* Declaration of Anthony Chicotel (Dkt. No. 56-9, "Chicotel SJ Decl.") Ex. 2 (August 6, 2015 letter from OAHA Chief Administrative Law Judge Stevenson).  However, in at least one instance, Chief ALJ Stevenson suggested that she would "find the proper people and programs within [the] Agency to determine how to best address and resolve [the] issue."  *Id.*  OAHA's position is that it "is not an enforcement division within [DHCS]" and is only the "hearing forum." *Id.* Ex. 4 at 2 (August 21, 2015 letter from ALJ Stevenson).

The Centers for Medicare and Medicaid Services ("CMS"), the federal agency within the U.S. Department of Health and Human Services ("HHS") tasked with enforcing the provisions of the Medicaid Act, has told the State of California that it "cannot advise [the California Department of Public Health ("CDPH")] or DHCS which department should enforce [] decisions," but that "the CMS regulations are clear that the State Agency must promptly make corrective actions."  *Id.* Ex. 3 at 3-4 (May 17, 2012 letter from CMS in response to an inquiry regarding whether state agencies are responsible for enforcing discharge appeals and hearing decisions on refusals to admit); *see also id.* Ex. 7 (August 31, 2017 letter from CMS to CDPH stating that "CMS cannot

---

[2] Section 1395i-3 applies to any facility that accepts Medicare reimbursement, while § 1396r applies to any facility that accepts Medicaid reimbursement.  The provisions at issue here are not substantively different in the two statutes.

advise either CDPH or DHCS on which department should enforce Transfer/Discharge (TDA) and Refusal to Readmit (RTR) decisions because CMS statute is silent about which state entity is responsible.").[3] Similarly, in response to an inquiry from CDPH regarding "how far CMS would expect . . . the state Medicaid agency to go in terms of enforcing a TDA (transfer and discharge) decision," HHS informed California that although "it is the State's responsibility, not CMS's, to determine how best to implement the hearing process and to provide for readmission of an individual if the hearing decision is favorable to him or her," HHS is "unaware of any provisions of the Act or the regulations that explicitly require the State to institute court actions in this context." *Id.* Ex. 6 (July 17, 2009 letter from Department of Health & Human Services to CDPH).

HHS has explained that "the state Medicaid agency may wish to involve the State survey agency to investigate any complaints of improper discharges or refusals to readmit, and to deploy any sanctions at their disposal that are warranted based on their findings." *Id.* In its May 2012 letter, for example, CMS responded to a statement in CDPH's letter indicating that "CDPH staff will cite facilities at the 'D' level for findings of inappropriate discharge and refusal to readmit" by noting that "[a]lthough this level of deficiency may fit some situations, our office does not want the CDPH District Offices to feel this is the only severity and scope designation that can be used," and explaining that "[o]ther scope and severity levels may apply, including a 'G' level deficiency . . . ." *Id.* Ex. 3 at 2.

CDPH also has taken the position that its "Licensing and Certification" program is not bound by an OAHA TDA decision because it "is not a party involved in the proceedings," which are "between the resident and the facility." *Id*. Ex. 5 at 2-3 (CDPH Memorandum dated Oct. 23, 2008). CDPH takes the position that "[n]either the facility nor the recipient has any further administrative appeal rights under this process," but recognizes that "[t]his does not mean that the

---

[3] It appears undisputed that if CMS believes California's process does not comply with the requirements of the FNHRA, the federal government has the power to terminate the state's Medicaid funding. *See Anderson*, 930 F.3d at 1074-75 (characterizing the Medicaid program as a cooperative federalism program that is "necessarily phrased as a set of directives to states that wish to receive federal funding," and concluding that "recognizing and enforcing individual beneficiaries' rights is a condition for federal funding of the state program").

parties involved cannot pursue other remedies such as a writ to Superior Court." *Id.* at 3. CDPH's policy is that it "does not issue citations based on the decisions alone," but "does investigate the same complaints that resulted in the resident's request for a [] hearing," and if a violation is found "that warrants the imposition of state or federal remedies, those remedies may be applied." *Id.* CDPH states that it "is charged with enforcing a broader spectrum of State and Federal laws than just those that pertain to transfer and discharge and for that reason, [Licensing and Certification] may not reach the same conclusion as the TDA hearing decision." *Id.*

DHCS and CDPH report directly to Defendant Ghaly. SJ Mot. at 4. Plaintiffs contend that each of the individual Plaintiffs in this case won their fairness hearing. *Id.* at 11 (citing Declaration of Sara Anderson (Dkt. No. 13-1, "Anderson Decl.") ¶ 7; Declaration of Vera Washington (Dkt. 13-3, "Washington Decl.") ¶ 10; Declaration of Jeremy Wilson (Dkt. 15, "Wilson Decl.") ¶ 6). Plaintiffs also contend that each of the individual Plaintiffs obtained an order from DHCS requiring the facility to readmit them. *Id.* However, according to Plaintiffs, the individual Plaintiffs were not able to return home because the State of California refused to enforce the hearing decisions. SJ Mot. at 4 (citing Anderson Decl. ¶¶ 8-10; Washington Decl. ¶¶ 11, 13; Wilson Decl. ¶¶ 7-9). Plaintiffs petitioned the State to take action, but Plaintiffs contend that the State refused to do so. *Id.*; Washington Decl. ¶ 13; Wilson Decl. ¶ 8.[4] Plaintiffs then filed this case seeking to enforce their federal rights under 42 U.S.C. § 1983.[5]

After the Ninth Circuit issued its opinion in this case, Plaintiffs wrote Governor Gavin Newsom a letter asking him to "do the right thing and enforce meaningful remedies" for Plaintiffs. Declaration of Matthew Borden (Dkt. No. 56-1, "Borden Decl.") Ex. 2. The State responded by

---

[4] The Court will consider Plaintiffs' declarations, the administrative letters, documents relating to CDPH's investigations of the facilities, and state court decisions as sufficiently authenticated evidence relevant to the motion for summary judgment. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). The focus at this stage in the proceeding is the admissibility of the documents' contents. *Fed. Deposit Ins. Corp. v. N.H. Ins. Co.*, 953 F.2d 478, 485 (9th Cir.1991) ("the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). Plaintiffs and counsel have directly explained in their declarations their basis for personal knowledge as to the contents of the evidence, which is enough at this stage.

[5] As discussed in detail below, the facts proffered by *amicus* CAHF call substantial aspects of Plaintiffs' characterizations into question.

1  filing a motion to dismiss the First Amendment Complaint ("FAC").  Dkt. No. 37.  On January 15,
2  2020, the Court denied Defendant's motion to dismiss.  Dkt. No. 43 at 12.  Thereafter, Plaintiffs
3  propounded discovery on the State (and the Governor).

## II.  MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.*  But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and "may not weigh the evidence or make credibility determinations."  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).  If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment.  Fed. R. Civ. P. 56(a).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor.  *Celotex*, 477 U.S. at 325.  In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence."  *Nissan Fire*,

210 F.3d at 1105.  "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102-03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103.  In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586.  A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the courts is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  If a nonmoving party fails to produce evidence that supports its claim or defense, courts must enter summary judgment in favor of the movant.  *Celotex*, 477 U.S. at 323.

**B.    Discussion**

  **i.    Timing of the Motion and Defendant's Request for Discovery**[6]

On February 20, 2020, the Court set deadlines in this matter pursuant to Federal Rule of Civil Procedure 16 and Civil Local Rule 16-10.  Dkt. No. 49.  The Court set October 5, 2020 as the close of fact discovery, and set February 25, 2021 as the dispositive motion hearing deadline.  *Id*. at 1.  The Court directed the parties that these dates may only "be altered by order of the Court and only upon a showing of good cause." *Id*. at 2.

On April 3, 2020—approximately six weeks after the scheduling deadlines were set and more than six months prior to the deadline for the close of fact discovery—Plaintiffs filed the motion for partial summary judgment, which Defendant contends was before it had the opportunity to propound any discovery requests (especially in light of the COVID-19 pandemic).  SJ Opp. at 1-2.  Defendant also argues that Plaintiffs inaccurately characterize many key facts as undisputed, and explains why it needs the opportunity to take discovery to fairly respond to Plaintiffs' claims.  Opp. at 3.  To that end, Defendant details a list of discovery requests that it

---

[6] On May 21, 2020, Plaintiffs filed an affidavit purporting to provide further evidence in support of the motion for summary judgment.  Dkt. No. 76.  The Court will not consider the affidavit and corresponding exhibit filed without leave after the motion was submitted.  *See* Civil L.R. 7-3(d).

6

plans to serve on Plaintiffs. *Id.*

Federal Rule of Civil Procedure 56 requires the non-moving party to present the reasons why it cannot present evidence to properly address the claims raised in a motion for summary judgement. *See* Fed. R. Civ. P. 56(d). Once this showing is made, the Court has broad latitude under Rule 56 to defer hearing the motion, deny the motion outright, or "issue any other appropriate order." *Id.* As Plaintiffs correctly note, "to obtain relief, the party opposing summary judgment must prove that it was diligent and that the added discovery would change the outcome of the motion." SJ Reply at 4 (citing *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001) ("[W]e will only find that the district court abused its discretion if the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment." (quotation marks omitted))).

Here, there is clearly a need for further discovery, as highlighted by the *amicus* brief of CAHF. As discussed below, the evidence and issues detailed in CAHF's *amicus* submission establish the existence of genuine issues of material fact as to whether the individual Plaintiffs have been unlawfully denied the right to an appeal, and Defendant has the right to conduct reasonable discovery to dispute Plaintiffs' contentions regarding these facts. The motion can be denied on this ground alone. *See* Fed. R. Civ. P. 56(d)(1).

### ii. Rights to a Readmission Hearing and Enforcement of DHCS Orders

Even if the motion for summary judgment was not premature under Rule 56—or if the Court deferred considering the motion—there remain disputed issues of fact as to whether any of the individual Plaintiffs were unlawfully denied any right described by the Ninth Circuit in *Anderson*.

Nursing home residents discharged or transferred in violation of federal law have a right to an enforceable readmission order. *See Anderson*, 930 F.3d at 1077; *see also Catanzano ex rel. Catanzano v. Wing*, 103 F.3d 223, 229 (2d Cir. 1996) ("[T]he statutory right to a fair hearing must include within it the right to effective redress.") (quotation marks omitted). The Ninth Circuit found that Plaintiffs are "seek[ing] to use § 1983 to enforce *against the state* the statutory right to an appeal." *Anderson*, 930 F.3d at 1080 (emphasis in original). The court further held that section

1396r(e)(3) does not include any "requirement that California implement hearing decisions directly through a state agency," and framed the relevant question as whether "the State provides no mechanism whatsoever to enforce each administrative appeal order regarding nursing home transfers and discharges. *Id.* at 1080-81.

Plaintiffs contend that the State provides no evidence that it has ever enforced a DHCS readmission order. SJ Mot. at 5-6. According to Plaintiffs, DHCS hearings are "meaningless show trial[s]," from which orders issue that neither the State's executive branch nor its judicial branch will enforce. *Id*. at 10 (citing *Anderson*, 930 F.3d at 1076). Plaintiffs also contend that the State's discovery responses and other filings confirm that none of its agencies enforce readmission orders. SJ Mot. at 11. For example, the State appears to have admitted that CDPH makes an independent determination as to whether the resident should be readmitted. SJ Mot. at 10 (citing Dkt. No. 38 (Request for Judicial Notice) Ex. J) (explaining that while Plaintiff Austin won his DHCS hearing and DHCS issued an order requiring that the facility admit him to the first available bed, "CDPH investigated the facility that refused to readmit Plaintiff Austin, but determined that the refusal was allowable under the federal regulations, and so did not impose a penalty."). Similarly, in its interrogatory responses, the State did not identify any "actions [it had] taken to ensure that [readmission orders] are enforced." *See* Borden Decl., Ex. 3 at 5-6; *see also id*. at 6-7 (identifying no actions the State has taken "to ensure that skilled-nursing-facility residents who obtain a [readmission order] are actually readmitted to their skilled-nursing facilities."). Instead, Defendant asserted that "it is not required to take any 'actions' and thus, there are no non-privileged 'actions' to identify in response to this request." *Id*. at 5-7.[7]

To that end, Plaintiffs contend that they have "all won their hearings, and none of them was readmitted." *See* Anderson Decl. ¶¶ 8-10; Washington Decl. ¶¶ 11, 13; Wilson Decl. ¶¶ 7-9. Highlighting the need for bilateral discovery and the premature nature of the motion for summary

---

[7] Defendant makes a somewhat theatrical argument that Plaintiffs have misconstrued this response, and that "they know better." SJ Opp. at 5. It is unclear how Plaintiffs' contention that Defendant "take[s] the position that it is not required to enforce DHCS readmission orders," SJ Reply at 3, misconstrues Defendant's position. Defendant is, however, entitled to explain any actions taken to enforce DHCS decisions after fact discovery is completed.

judgment, on May 11, 2020, CAHF filed an *amicus curiae* brief to provide a more complete picture as to two critical readmission orders relied upon by Plaintiff—one of which was subsequently vacated and the other of which involved practical impediments to readmission. Dkt. No. 74. Although, as noted above, Plaintiffs submitted a declaration averring that Plaintiff John Wilson "won his hearing" and DHCS "ordered the facility to readmit" him, Wilson Decl. ¶ 7, this order was in fact *vacated* on September 14, 2016, in direct response to a California court's order. Dkt. No. 74-1 ("RJN"), Ex. A & Encl. 2. On that date, DHCS issued a new order, finding that the facility, St. John's Pleasant Valley Hospital D/P SNF-Subacute Unit ("St. John's"), "was not required to readmit" Mr. Wilson. *Id.*, Ex. A, Encl. 3.

St. John's filed a writ petition in the Superior Court of California challenging the decision ordering Mr. Wilson's readmission. As the Superior Court noted, the writ proceeding presented the question of "whether the law compelled [St. John's] to readmit [Plaintiff Wilson] to the subacute unit at a time when he did not have an attending physician." *Id.*, Ex. A, Encl. 1. Because California law requires residents "to be under the care of an attending physician while residing in the subject medical facility," and because DHCS could not compel (and could not require St. John's to compel) the facility's medical director to serve as Plaintiff Wilson's attending physician, the Superior Court held that the readmission order was contrary to law and must be vacated. *Id.*

DHCS subsequently filed a return to writ, demonstrating to the Superior Court that DHCS had set aside and vacated its June 26, 2015 decision. *Id.*, Ex. A. In its superseding decision, DHCS concluded that the facility "met [the readmission] requirement to the best of its ability and was not required to readmit" Mr. Wilson because readmitting him "without a willing attending physician" would be unlawful. *Id.*, Ex. A, Encl. 3. Mr. Wilson's representative, Jeremy Wilson, and his attorney both received notice from DHCS, including copies of the order setting aside and vacating the prior decision and the new decision and order. *Id.*, Ex. A. The Superior Court's decision also indicated that, contrary to the allegations by Plaintiffs, Plaintiff Wilson was in fact readmitted to St. John's once an attending physician undertook his care and properly issued admission orders. *Id.*

Therefore, Plaintiffs' assertion that "Plaintiffs all won their hearings, and none of them was

readmitted," SJ Mot. at 11; *see also id.* at 4, appears inconsistent with the factual record. At a minimum, there are genuine issues of material fact as to whether the processes at issue complied with the Ninth Circuit's formulation.

Similarly, Defendant previously filed evidence showing that CDPH investigated complaints relating to the respective facilities' failures to readmit the individual Plaintiffs, and issued citations. *See* Dkt. No. 37 at 11-14; Dkt. No. 38. These documents show that in the case of Plaintiff Anderson, CDPH issued a "B" citation to the facility for its failure to readmit him and assessed a corresponding penalty of $2,000, which increased each day that he was not readmitted, ultimately resulting in a penalty of $11,850.00 that was affirmed after the facility appealed the citation. *See* Dkt. No. 37 at 11; Dkt. No. 38, Ex H. In the case of Plaintiff Wilson, CDPH investigated the complaint relating to the facility's failure to readmit him and issued a "B" citation and monetary penalties, which were dismissed in an arbitration after the facility appealed. Dkt. No. 37 at 12-13; Dkt. No. 38, Ex D. And in the case of Plaintiff Austin, CDPH investigated the complaint relating to the failure of the facility to readmit him, determined that the denial of readmission was allowable under federal regulation 42 C.F.R. § 483.12a (now 42 C.F.R. § 483.15(c)(1)(i)(C)), and so did not issue a citation. Dkt. No. 37 at 13; Dkt. No. 38, Ex J. In light of the Ninth Circuit's statement that the "issu[ance of] a citation pursuant to state licensing laws" would call into question how Plaintiffs could show that "the administrative remedies provided by California law are unavailable to enforce a favorable order after an appeal that a specific resident be readmitted to a nursing facility," these citations also highlight a genuine issue of fact as to whether any federal violation occurred. *Anderson*, 930 F.3d at 1081.

The Court continues to note the practical difficulties with Plaintiffs' apparent Section 1983 theory in this case. The relevant federal regulations require states participating in Medicaid to "provide a fair mechanism . . . for hearing appeals on transfers and discharges" of nursing home residents. *Id.* at 1069. Under these regulations, if "'the hearing decision is favorable to the applicant or beneficiary,' the state must . . ., if appropriate, provide for admission or readmission of an individual to a facility." *Id.* at 1077 (quoting 42 C.F.R. § 431.246). The Ninth Circuit has found that the right to such an appeal "includes within it provision for some state-provided process

10

capable of providing relief." *Id.* at 1075. Among the potential remedies that the Ninth Circuit found could be employed against noncompliant nursing homes are "civil monetary penalties." *Id.* at 1076. Here, it appears undisputable that in the case of one of the named Plaintiffs, Mr. Wilson was readmitted once the admitting physician requirement was satisfied. RJN Ex. A, Encl. 3. And in Mr. Wilson's and at least Mr. Anderson's cases, it is undisputable that CDPH imposed citations and monetary penalties. *See, e.g.*, Dkt. No. 37 at 11; Dkt. No. 38, Ex H. So, while the Ninth Circuit declined to "address what specific forms of redress would be necessary to comply with [the FNHRA]," *Anderson*, 930 F.3d at 1080, there already appears to be a substantial question as to how this record could support the conclusion that "the State provides no mechanism whatsoever to enforce each administrative appeal order regarding nursing home transfers and discharges," *id.* at 1081. It also appears to the Court that Plaintiffs may be asking it to conclude that the entire system under which California state courts consider these questions, as happened in Mr. Wilson's case, is illegal under federal law, which could pose a raft of complicated federalism questions.[8]

Whatever the merits of these issues, which the Court presumes may be raised by the Defendant in a timely motion for summary judgment, it is clear at this stage that Plaintiffs' motion for summary judgment must be denied based on the existence of numerous and central disputed issues of fact.[9]

## III.    MOTION FOR PRELIMINARY INJUNCTION

On April 3, 2020, Plaintiffs filed a motion for a preliminary injunction, framing the question posed as "Should the Court order the State to enforce DHCS readmission orders when the

---

[8] For example, to the extent Plaintiffs are asking the Court find that any California state court order that does not mechanically execute an OAHA readmission order is wrong, that position seemingly could implicate the *Younger* Doctrine. *See Younger v. Harris*, 401 U.S. 37 (1971).

[9] Plaintiffs similarly contest Defendant's contention that DHCS hearing orders are meaningful because indigent residents can obtain counsel, bring suit under Cal. Health & Safety Code § 1430(b), and thereby force facilities to comply with DHCS's orders to readmit them. SJ Mot. at 12 (citing Dkt. No. 37 at 18-20). Once again, fact discovery will be necessary, because the current record does not establish that this private cause of action "provides no mechanism whatsoever" to comply with FNHRA's requirements. *See Anderson*, 930 F.3d at 1078 n. 7 (explaining that "[a]lternatively, the state may choose to provide other forms of redress against noncompliant nursing homes—for example, allowing lawsuits against the facilities to enforce appeal orders"). Moreover, the practical difficulties to which Plaintiffs point regarding the apparent financial undesirability of these cases for paid (but presumably not pro bono) attorneys do not make the private right of action provision inherently inadequate as a matter of law.

1   State's failure to do so violates federal law and is causing irreparable harm to residents and
2   citizens in need of hospital beds?" PI Mot. at 3. Plaintiffs do not proffer any specific allegation of
3   irreparable harm to any particular person, and instead speculate that "at least some residents will
4   be dumped to a hospital, cleared to leave, obtain a readmission order, and nevertheless be forced
5   to remain in a hospital thick with coronavirus." *Id*. at 20.

6   Plaintiffs seek various forms of relief from the Court, including an order compelling "the
7   State" to implement seven mandatory and specific remedies provided for in the California Welfare
8   and Institutions Code and California Health and Safety Code, *id.* at 23-24, including as follows:

9   1) Upon any known failure of a facility to obey an order from DHCS that a resident be
10     readmitted from a hospital, the State shall: (A) assert an offset or recoupment against
11     the nursing facility's Medi-Cal payments for medically unnecessary care provided at a
12     hospital as a result of the refusal to readmit; (B) issue an immediate Class A citation
13     and plan of correction requiring the facility to readmit the resident; (C) impose daily
14     penalties for each day the facility refuses readmission; and (D) after 10 days of non-
15     compliance, deny Medi-Cal payments for new admissions and recommend to the
16     Centers for Medicare and Medicaid Services ("CMS") that it deny Medicare payments
17     for new admissions.
18   2) In addition, if a resident refused readmission dies as a result of Covid-19 contracted
19     while in the hospital, the State shall issue a Class AA citation to the facility for causing
20     the death of a patient or resident.
21   3) The State shall provide immediate notice to all facilities in the State that the State will
22     take all the measures above should they disobey a readmission Order from DHCS.
23   4) The State shall track repeat offenders for the imposition of additional penalties, and
24     provide notice to Plaintiffs of who they are.
25   *Id*. at 2.

26   A preliminary injunction is "an extraordinary remedy that may only be awarded upon a
27   clear showing that the Plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*,
28   555 U.S. 7, 22 (2008). Under the traditional four-factor test, Plaintiffs may obtain a preliminary

1  injunction if they show that (1) they are likely to succeed on the merits; (2) they are likely to suffer
2  irreparable harm in the absence of preliminary relief; (3) the balance of equities tip in their favor;
3  and (4) an injunction is in the public interest. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d
4  733, 738 (9th Cir. 2014). Alternately, in the Ninth Circuit, Plaintiffs who show that the balance of
5  hardships tips "sharply" in their favor may obtain an injunction even if, rather than a "likelihood
6  of success," they merely raise "serious questions" going to the merits. *All. for the Wild Rockies v.
7  Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

As the Ninth Circuit has explained, a preliminary injunction "can take two forms," either a "prohibitory injunction" or a "mandatory injunction." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009). "Prohibitory injunction[s]" simply "preserve the status quo pending a determination of the action on the merits," while "mandatory injunction[s]" "order[] a responsible party to take action." *Id*. (internal quotation omitted). Mandatory injunctions are "particularly disfavored" and are only permissible if "extreme or very serious damage will result." *Id*. at 879. Courts do not issue mandatory injunctions "in doubtful cases." *Id*.

Plaintiffs clearly seek a mandatory injunction which "goes well beyond simply maintaining the status quo [p]endente lite," with the consequence that their requested relief is "particularly disfavored." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980) (citation omitted). Accordingly, their burden is "doubly demanding," and they must establish that "the law and facts clearly favor" their position. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). They fail to do so.

The sweeping mandatory relief requested by Plaintiffs is not warranted because the underlying merits are very much in dispute, "the law and facts" do not clearly favor Plaintiffs, and a number of Plaintiffs' factual allegations have been called into question. Under these circumstances, it would not be appropriate for the Court to enter a preliminary order micromanaging the manner in which California attempts to satisfy the requirements of the Medicaid Act, especially given that the record clearly reflects that the details are crucial in how these issues are resolved. Plaintiffs' motion for preliminary injunction can be denied on this

ground alone.[10]

Plaintiffs' motion for preliminary injunction also fails because they do not demonstrate any actual, imminent, or irreparable threat of injury. "A plaintiff seeking a preliminary injunction must demonstrate that irreparable injury is likely in the absence of preliminary relief. Mere possibility of harm is not enough." *Enyart v. Nat. Conference of Bar Exam'rs*, 630 F.3d 1153, 1165 (9th Cir. 2011) (citation omitted). Plaintiffs' alleged irreparable harm is that, "[i]n the absence of an injunction ordering the State to begin enforcing its readmission orders, at least some residents will be dumped to a hospital, cleared to leave, obtain a readmission order, and be forced to remain in a hospital thick with coronavirus." PI Mot. at 20 (citing Evans Decl. ¶¶ 15, 23). This is so for at least three reasons, according to Plaintiffs: "(1) each day a resident is unnecessarily kept in a hospital increases his or her chance of contracting a deadly disease and at the same time deprives all Californians of a critically necessary hospital bed; (2) residents suffer other irreparable damages from dumping, including transfer trauma, social isolation, and risk of being subjected to dangerous psychotropic drugs used as chemical restraints; and (3) unlawful eviction is itself an irreparable injury that the statute is designed to prevent." PI Mot. at 16.

These arguments do not amount to more than an assertion of possible harm. Plaintiffs provide no supporting evidence for these contentions, and their showing does not rise to the demanding level required for entry of a mandatory preliminary injunction.

The Motion for a Preliminary Injunction is **DENIED**.

---

[10] At multiple points in their briefs, Plaintiffs assert that the Court already has decided a number of issues in their favor in denying Defendant's motion to dismiss the FAC. *See, e.g.,* PI Reply at 1 (claiming that "[i]n its opposition, the State does little to contest the merits beyond offering arguments the Court has already rejected"); *id.* at 5 (contending that the Court has "repudiated" the position that "CDPH's independent 'investigation' of refusals to readmit constitutes enforcement of the results of residents' federally mandated hearings"). This is inaccurate: as the Court has said, multiple times, "it continues to find Plaintiff's precise theory of relief . . . less than entirely clear." Dkt. No. 43 at 10-11. All the Court previously found is that "Plaintiffs have alleged a plausible violation of the FNHRA appeals provision as analyzed by the Ninth Circuit in *Anderson*" so as to survive a motion to dismiss. *Id.* at 11. As the Court explained, "Defendant's disagreement with the substance of Plaintiffs' allegations is more suited for adjudication at the summary judgment stage," *id.* at 10, and for purposes of both the summary judgment and preliminary injunction motions, the Court has to address these questions in light of the factual record, not just Plaintiffs' assertions.

14

### IV. MOTION TO QUASH

Gavin Newsom, in his official capacity as Governor of the State of California, moved to quash a subpoena that lists 13 requests for documents served by Plaintiffs on February 4, 2020. Mot. to Quash at 3. The Governor moved to quash the subpoena on the following grounds: (1) the documents requested are not relevant to any claim in the lawsuit; (2) the subpoena subjects the non-party Governor to undue burden; (3) the subpoena seek documents that are either protected from disclosure by privileges, including the deliberative process privilege, or are otherwise available from other, public, sources; and (4) Plaintiffs did not comply with Federal Rule of Civil Procedure 45, which requires that "a notice and copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed." Mot. to Quash at 3; Fed. R. Civ. P. 45(a)(4).

When the burden of the proposed discovery outweighs its likely benefits, discovery may be limited or refused. Fed. R. Civ. P. 26(b)(2)(C)(iii); *Hall v. Keller*, 256 Fed. Appx. 960, 961 (9th Cir. 2017).[11] Determining whether a subpoena is unduly burdensome "requires the court to consider 'such factors as relevance, the need of the party for the documents, the breadth of the document request, and the time period covered by it, the particularly with which the documents are described and the burden imposed.'" *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (citations omitted).

Plaintiffs here do not seek "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The premise of the subpoena request includes assertions that the Governor is " beholden to his significant donors" "who are, or are closely affiliated with, the nursing-home slumlords," "magnate[s]," and "lobbyists." Mot. to Quash at 8 (citing Declaration of Dane C. Barca, Dkt. No. 51-1 ("Barca Decl.") ¶¶ 4(e)-(g); Exs. A, B). Counsel further suggests that the subpoena was served for the purpose of demonstrating that the non-party Governor is affiliated with these "slumlords," and "is thus personally culpable for the harm alleged in the FAC." *Id.*

---

[11] As an unpublished Ninth Circuit decision, *Hall* is not precedent, but may be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

1    Based on its contents and these assertions, Defendant contends that the subpoena was
2    served on the non-party Governor "for the purpose of annoying and harassment, and not really for
3    the purpose of getting information." Mot. to Quash at 12 (citing *Mattel, Inc. v. Walking Mountain*
4    *Productions*, 353 F.3d 792, 814 (9th Cir. 2003)). While the Court has some concern that this
5    characterization may be true to at least some extent, it need not reach that question, because the
6    subpoena must be quashed for more basic reasons.
7    Governor Newsom, a nonparty, was not in office during any of the events alleged in the
8    FAC, Mot. to Quash at 8, which heightens the scrutiny the Court applies to the subpoena.
9    *Lemberg Law LLC v. Hussin*, No. 16-mc-80066-JCS, 2016 WL 3231300, at *5 (N.D. Cal. June
10   13, 2016) ("The Ninth Circuit has long held that nonparties subject to discovery requests deserve
11   extra protection from the courts.") (citing *United States v. C.B.S., Inc.*, 666 F.2d 364, 371-72 (9th
12   Cir. 1982)). Additionally, a party must limit discovery if the discovery sought may be obtained
13   from some other source that is more convenient. Fed. R. Civ. P. 26(b )(2)(C)(i). And a party may
14   seek to quash a subpoena by demonstrating that the documents may be sought from other sources
15   that are less burdensome without the need to seek them from a nonparty by subpoena. *Nidec*
16   *Corp. v. Victor Co. of Japan*, 249 F.R.D 575, 577 (N.D. Cal. 2007).
17   At least one category of Plaintiffs' requests seeks information regarding campaign
18   contributions by non-parties. Barca Decl. ¶ 4(g), Ex. B. In addition to being unrelated to the
19   claims in this lawsuit, the information sought is clearly available from other sources, and Plaintiffs
20   are in fact actively seeking to obtain the information they seek from those sources. *Id*. (email from
21   Plaintiffs' counsel indicating that "Plaintiffs have already sought the requested documents from
22   the agencies as well."). Lastly, none of the subpoena requests—which seek documents relating to
23   any of the Governor's deliberations on potential shifts in policy—are related to the narrow
24   question raised in the FAC regarding whether California's appeal process complies with federal
25   law. The Governor's political deliberation process and campaign contributions are not relevant to
26   that question.
27   Because the Governor is not a named party in this case, Plaintiffs seek information that
28   they acknowledge they can seek from other sources, the subpoena seeks, at least in part, to help

show that the Governor has some moral culpability for the harm alleged in the FAC, and the subpoena clearly imposes an "undue burden" on the non-party Governor to search for documents that may be responsive to an overly broad request for irrelevant information, the Court **GRANTS** the Motion to Quash.

## V. CONCLUSION

For the reasons discussed, the Court **DENIES** Plaintiffs' motion for partial summary judgment and motion for preliminary injunction, and **GRANTS** Defendant's motion to quash.

**IT IS SO ORDERED.**

Dated: 6/15/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge